IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NICHOLAS JAMES SPRY,<br><br>Plaintiff,<br><br>v.<br><br>JON DOE, DIETITIAN AT SCOTLAND CORRECTIONAL, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:23CV835 |

**MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

The United States Constitution protects inmates from cruel and unusual punishment, in the form of prison officials' deliberate indifference to a medical need. But this protection does not extend to an inmate's mere disagreement with medical staff. Nor does it extend to ailments that do not constitute a serious medical need. For these reasons, as set forth in further detail below, the Court should grant the defendants' motion for summary judgment and dismiss all claims against them.

When the plaintiff, Nicholas James Spry, was housed at the Scotland Correctional Institute ("SCI") and then at Columbus Correctional Institute ("CCI"), he repeatedly requested a medical diet to lose weight, believing his doctor had ordered one. But, after a nutrition consultation, the clinical dietitian recommended a Kosher diet. Spry sued Ryan Koelsch, a clinical dietitian for the North Carolina Department of Adult Corrections ("NCDAC"), and Kimmi Ann Ryan, a nurse at CCI, in their individual and official capacities for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See* Docket Entries 20-1, 33 (collectively "Amended Complaint").[1]

Koelsch and Ryan have moved for summary judgment, arguing that Spry cannot show that he had a serious medical need or that either defendant was deliberately indifferent and that they are both entitled to qualified immunity. *See* Mot. for

[1] Spry voluntarily dismissed all other defendants and claims and chose to proceed only against Koelsch and Ryan for the Eighth Amendment violation. *See* Docket Entries 56, 67.

Summ. J., Docket Entry 63; Br. in Supp. of Mot. for Summ. J., Docket Entries 64, 64-1 to 64-11.

In opposition to the motion, Spry submitted a declaration and the defendants' discovery responses but he has not shown a genuine dispute of material fact. *See* Docket Entries 69, 69-1, 70. Therefore, the Court should grant the defendants' motion and find that they are entitled to qualified immunity.

## I. FACTS

On September 20, 2022, Koelsch, a Registered Dietitian who consults with the NCDAC, received a nutrition consultation order from Dr. Claude Nuzum, a hepatology specialist, for Spry. *See* Ryan Koelsch Decl. ¶ 27 (Oct. 23, 2024), Docket Entry 64-2; Clinical Encounter (Sept. 20, 2022), Docket Entry 64-3. Dr. Nuzum ordered a "nutrition consult with goal of weight <175 lbs in a year." *See id.* ¶ 28. The request did not prescribe Spry any specific diet. *See id.* ¶¶ 29-30. The only parameter was that the diet support weight loss. *See id.* ¶¶ 29-30.

Koelsch completed Spry's nutrition assessment and noted that Spry had chosen the Kosher diet option on April 12, 2022. *See id.* ¶ 32. But Spry requested removal from the Kosher diet around August 2022 "due to the aggressive and disrespectful nature of staff and family" and the request was granted. *See* Spry Decl. ¶ 3.

NCDAC staff avoid interfering with the Kosher diet, a voluntary religious menu accommodation, in deference to the inmate's First Amendment rights. *See* Koelsch Decl. ¶ 33. Therefore, Koelsch recommended that Spry continue the Kosher diet unless and until he opted for a different plan. *See id.* ¶ 34. Furthermore, Koelsch felt that the Kosher menu, along with regular exercise, would support Spry's weight loss goal because it is a lower calorie and lower fat diet than the standard diet. *See id.* ¶¶ 35-37. If Spry wanted Koelsch to reevaluate his nutrition assessment, Spry would submit a new sick call request. *See id.* ¶ 39.

On March 10, 2023, Spry submitted a grievance claiming that Koelsch "denied" the doctor's order that he "be placed on a weight management diet." *See* Admin. Remedy Procedure, Docket Entry 64-4. The Step One – Unit Response grievance examiner responded that Koelsch had recommended that Spry continue the Kosher diet because it supported his weight loss goal. *See* Wakenda Greene Decl. ¶¶ 28-29 (undated), Docket Entry 64-6. The examiner told Spry that if he wanted to change his diet, he could request another nutrition assessment through the sick call process. *See* Grievance Resp., Docket Entry 64-11.

Unsatisfied, Spry appealed to the Step Two – Area/Complex/Institution Response, and that examiner made the same determination, reminding Spry that the Step One examiner instructed him how to request a

different diet. *See* Greene Decl. ¶¶ 31-33; Grievance Resp.

Spry then appealed to Step Three – Administrative Remedy review where the examiner concurred that Koelsch's recommendation supported Spry's weight loss goal. *See id.* ¶¶ 22-27, 34-37.

Despite "follow[ing] all directives to receive needed medical diet outlined by Defendants through grievance responses and policy," Spry did not receive the requested medical diet or new nutritional consultation. *See* Spry Decl. ¶ 4.

By April 25, 2023, Spry had transferred from SCI to CCI. *See* CCI Health Orientation, Docket Entry 64-1.

On June 18, 2023, at CCI, Ryan saw Spry for a sick call to address his complaints of vision problems, replacement insoles, and diet consultation. *See* Kimmi Ann Ryan Decl. ¶ 25 (undated), Docket Entry 64-7; Clinical Encounter, Docket Entry 64-5. During this visit, Spry requested a diet for weight loss. *See* Clinical Encounter. Ryan reviewed Koelsch's nutrition assessment in which he "charted that 'Kosher menu is overall low in fat and provides fewer Kcals than regular menu. Will recommend regular diet to allow Kosher diet to be handled through food service staff.'" *See id.* (all-caps font removed); Ryan Decl. ¶¶ 27-29. According to Ryan, she told Spry that medical staff cannot change religious diets. *See* Ryan Decl. ¶ 30. Spry avers that Ryan "never told [him] anything about [his] diet other than she would put it in for the doctor." *See* Spry Decl. ¶ 5. "She especially did not mention adding or removing [him] from Kosher diet." *See id.*

## II. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

The moving party bears the burden of establishing the absence of a genuine dispute of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56).

"Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing – that is,

pointing out to the . . . court – that there is an absence of evidence to support the nonmoving party's case.'" *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) (quoting *Celotex Corp.*, 477 U.S. at 325). "If the moving party carries this initial burden, the burden then shifts to the nonmoving party, who must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

## III. DISCUSSION

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A Section 1983 claimant must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment of the United States Constitution prohibits punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The Amendment also provides protection with respect to 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Shakka v. Smith*, 71 F.3d 162, 165–66 (4th Cir. 1995) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "In order to establish the imposition of cruel and unusual punishment, a prisoner must [allege] two elements—that the deprivation of [a] basic human need was objectively sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." *See id.* at 166 (internal quotation and citations omitted) (alterations in original).

Specifically, "a plaintiff must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025) (internal quotation and citation omitted).

A claim that prison officials have failed to provide inmates with "reasonable medical treatment," *see Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977), "sound[s] in the Eighth Amendment," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Prisoners are entitled to "'nutritionally adequate food, prepared and served under conditions which do not present immediate danger to the[ir] health and well-being." *Hammock v. Watts*, 146 F.4th 349, 361 (4th Cir. 2025) (quoting *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985)). A constitutional

violation arises when the inmate suffers "'serious medical . . . deterioration attributable to' the challenged conditions." *Id.* (citation omitted). But "[a]bsent a demonstration of a meal posing a substantial risk of harm, many courts have rejected arguments [even] from diabetic inmates who believe that they have a constitutional right to [specific] diets . . . ." *Lewis v. Hoke Cnty.*, No. 1:17CV987, 2020 WL 5213929, at *12 (M.D.N.C. Sept. 1, 2020) (collecting cases), *report and recommendation adopted*, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022), *aff'd*, 2022 WL 1641282 (4th Cir. 2022). In sum, "[o]nly an 'extreme deprivation' is actionable under the Eighth Amendment." *Scinto v. Stansberry*, 841 F.3d 219, 234 (4th Cir. 2016); *see also id.* at 233 (recognizing that the right to "receive special diets when medically appropriate is not without limit").

To succeed on an Eighth Amendment claim related to medical treatment, a plaintiff must show that the officer "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *See Iko*, 535 F.3d at 241 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Furthermore, it is well-settled that "not every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment. Rather, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere negligence, malpractice, or incorrect diagnosis is not actionable." *Boone v. Carvajal*, No. CV 6:21-3053-JD-KFM, 2024 WL 3052064, at *11 (D.S.C. Feb. 5, 2024), *report and recommendation adopted*, No. 6:21-CV-3053-JD-KFM, 2024 WL 3052046 (D.S.C. May 3, 2024), *aff'd*, No. 24-6588, 2025 WL 1098543 (4th Cir. Apr. 14, 2025) (internal quotations and citations omitted).

For an Eighth Amendment claim, an officer must have acted with a sufficiently culpable state of mind, that is with deliberate indifference; he must have had "*actual knowledge of the risk of harm* to the inmate" and also "'recognized that *his actions were insufficient*' to mitigate the risk of harm to the inmate arising from his medical needs." *Iko*, 535 F.3d at 241 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis in *Iko*); *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (Acting with deliberate indifference is "something more than mere negligence but does not require actual purposive intent. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or

risk of harm.") (internal quotation and citation omitted).

Prison officials may act with deliberate indifference by "intentionally denying or delaying access to medical care . . . ." *Estelle*, 429 U.S. at 105. But "[m]ere delay is not enough." *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Id.*

Additionally, an inmate's disagreement with medical staff about his treatment is insufficient absent exceptional circumstances. *See Hixson v. Moran*, 1 F.4th 297, 302–03 (4th Cir. 2021) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970) (noting that exceptional circumstances are those in which medical care is "so grossly incompetent, inadequate or excessive as to shock the general conscience or to be intolerable to fundamental fairness"))); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e consistently have found such disagreements [between an inmate and physician about proper medical care] to fall short of showing deliberate indifference.").

A. Spry's official capacity claims fail as a matter of law.

Spry asserts his § 1983 claim against Koelsch and Ryan in their official capacities. At all relevant times, they were both employees of the State of North Carolina. *See* Koelsch Decl. ¶ 2; Ryan Decl. ¶¶ 1-2; *see also Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (recognizing that the NCDAC "is a North Carolina agency").

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983 and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*, 2017 WL 4921690, at *4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71). Even if that were not the case, North Carolina is immune from a § 1983 suit. *See Biggs*, 953 at 241; *Singh v. Univ. of N.C. at Chapel Hill*, 659 F. Supp. 3d 659, 669 (M.D.N.C. 2023).

Therefore, the Court should dismiss the official capacity claims against Koelsch and Ryan.

B. Spry's deliberate indifference claim fails as a matter of law.

Spry's claim that, in their individual capacities, Koelsch and Ryan were

deliberately indifferent to his serious medical need fails at each element.

First, he did not have a serious medical need. Dr. Nuzum's clinical assessment of Spry was *possible* fatty liver. Dr. Nuzum did not mandate treatment for the provisional diagnosis, nor is a possible fatty liver something a lay person would easily recognize as necessitating medical attention.

Next, even if a provisional diagnosis of fatty liver was a serious medical need, neither defendant acted with deliberate indifference to that need. When Koelsch assessed Spry's nutritional needs and goals, he saw that Spry had earlier requested a Kosher diet. By the time of the nutritional assessment, Spry was no longer on the Kosher diet at his request – not due to a medical or other health need, but because the staff and his family were being rude about it.

There is simply no evidence that Koelsch or Ryan had actual knowledge that a recommended lower fat and lower calorie Kosher diet posed any risk to Spry, much less that the recommendation was insufficient to mitigate the risk. Koelsch reviewed Dr. Nuzum's clinical note – in which Dr. Nuzum did not prescribe any type of diet – and order for a nutrition consultation. Koelsch recognized the weight loss goal, saw Spry's earlier selection of a Kosher diet, and determined that the Kosher diet would both honor Spry's exercise of religion and, along with regular exercise, contribute to weight loss. Nothing about Koelsch's assessment of Spry's nutritional needs and weight loss goal or Ryan's confirmation of that recommendation shocks the conscience or is fundamentally unfair. And even Spry acknowledges that Ryan told him that, after his June 2023 sick call visit, "she would put it in for the doctor."

There is also no evidence that Spry developed fatty liver or any other medical infirmity as a result of the recommended Kosher diet.

The law is clear that mere disagreement with medical treatment decisions is insufficient for a deliberate indifference claim, absent exceptional circumstances that are not present here. And, at its heart, Spry's claim is nothing more than disagreement and frustration with Koelsch's recommended Kosher diet and Ryan's confirmation of the recommendation.

### C. Qualified immunity protects Koelsch and Ryan.

"The doctrine of qualified immunity 'balances two important interests,' namely, the need to hold accountable public officials who exercise power irresponsibly, and the need to shield officials who perform their duties responsibly from 'harassment, distraction, and liability.'" *Byers v. Painter*, 173 F.4th 155, 160 (4th Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

"In resolving whether to award qualified immunity at summary judgment, courts are to engage in a

'two-pronged inquiry.'" *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655 (2014)). First, the court determines whether "in a light most favorable to the injured party – 'the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Next, the court asks "whether the right at issue in the first prong was 'clearly established at the time' of the contested action." *Id.* (quoting *Pearson*, 555 U.S. at 227). "Accordingly, a court may award qualified immunity to an official if either (1) there is no violation of a constitutional right, or (2) the constitutional right was not clearly established." *Id.* (citing *Pearson*, 555 U.S. at 227).

The court is required to define the constitutional right at a "'high level of particularity'" because "[t]he way in which an alleged right is described matters." *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024) (quoting *Ewards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999)). "Although a case directly on point is not required, existing precedent 'must have placed the statutory or constitutional question beyond debate.'" *Id.* at 505-06 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

"In the end, the key inquiry is whether 'the law provided "fair warning" that [the officer's] conduct was unconstitutional.'" *Atkinson*, 100 F.4th at 506. (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (alteration in *Booker*)). To answer that question, courts look to precedent of the United States Supreme Court and, in this district, the Fourth Circuit Court of Appeals. *Id.*

As previously discussed, it was well established at the time of his nutritional assessment and sick call visit that Spry had the right to reasonable medical treatment and nutritionally adequate meals. But neither Koelsch nor Ryan violated that right. Accordingly, they are entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated herein, it is hereby **RECOMMENDED** that the Court grant the defendants' Motion for Summary Judgment and find that they are entitled to qualified immunity.

JoAnna Gibson McFadden
United States Magistrate Judge

September 9, 2026
Durham, North Carolina